## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **KELLI CHUMLEY LOWMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | Civil Action Number |
| **NANCY A. BERRYHILL, Acting** | ) | **4:17-cv-00685-AKK** |
| **Commissioner of the Social Security** | ) | |
| **Administration** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Kelli Lowman brings this action pursuant to Section 405(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). The court finds that the Administrative Law Judge's ("ALJ") and the Appeals Council's decisions—which have become the decision of the Commissioner—are supported by substantial evidence. Therefore, the court **AFFIRMS** the decision denying benefits.

### I. PROCEDURAL HISTORY

Lowman filed an application for a period of disability and disability insurance benefits, alleging a disability beginning on September 5, 2011. R. 119-20, 171-72. Lowman was last insured for disability benefits on December 31,

2012. R. 20, 119. After the SSA denied her application, Lowman requested a hearing before an ALJ, who subsequently denied Lowman's claim. R. 20-44, 72-117, 126-30. This became the final decision of the Commissioner when the Appeals Council refused to grant review. R. 1-7. Lowman then filed this action pursuant to § 405(g) of the Act, 42 U.S.C. § 405(g). Doc. 1.

## II. STANDARD OF REVIEW

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person

would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The disability must have begun on or before the date that the individual was last insured for disability benefits. 42 U.S.C. § 423 (a)(1)(A), (c)(1).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1)     whether the claimant is currently unemployed;

(2)     whether the claimant has a severe impairment;

(3)     whether the impairment meets or equals one listed by the Secretary;

(4)     whether the claimant is unable to perform his or her past work; and

(5)     whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV. THE COMMISSIONER'S DECISION

In performing the five step analysis, the ALJ found that Lowman had not engaged in substantial gainful activity from September 5, 2011 through December 31, 2012, and therefore met step one. R. 25. Next, the ALJ found that Lowman satisfied step two because she suffered from the severe impairments of left

temporal lobe contusion with closed head trauma, cervicalgia with bulging C5-6 disc, brachial neuritis or radiculitis, headaches, and arthropathy. R. 25. The ALJ then proceeded to the next step and found that Lowman did not satisfy Step Three because her impairments did not meet or equal any listing. R. 30. Although the ALJ answered step three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to step four, and determined that Lowman has the residual functional capacity ("RFC") to perform sedentary work, except she was capable of performing non-complex job tasks requiring simple one- or two-step procedures, could have occasional contact with the general public and with co-workers, and could engage in frequent, but not continuous, overhead reaching and lifting. R. 33. In light of Lowman's RFC, the ALJ determined that Lowman was not able to perform any of her past relevant work. R. 38. Lastly, in step five, the ALJ considered Lowman's age, education, work experience, and RFC, and determined that there are jobs that exist in significant numbers in the national economy that Lowman can perform. R. 39, 115-16. Therefore, the ALJ found that Lowman was not disabled under the Act. R. 40.

## V. ANALYSIS

Lowman contends that the ALJ erred by improperly weighing the opinions of Dr. Ochuko Odjegba and Dr. Jon Rogers; failing to consider all of Lowman's severe impairments; mistakenly finding that Lowman's disabilities did not meet or

equal any listing; and failing to state adequate reasons for finding Lowman not credible. The court addresses each contention in turn.

## A. Dr. Odjegba's Opinion

Lowman contends that the ALJ should have given greater weight to the opinion of Dr. Odjegba, her treating physician. An ALJ must consider multiple factors in determining how much weight to assign to a physician's opinion, including whether the doctor examined the claimant, whether the doctor treated the claimant, the evidence the doctor presents to support her opinion, whether the doctor's opinion is consistent with the record as a whole, and the doctor's specialty. 20 C.F.R. § 404.1527(c). A treating physician's opinion is generally entitled to more weight than that of a non-treating physician, and an ALJ must give good reasons for the weight given to a treating doctor's opinion. 20 C.F.R. § 404.1527(c)(2); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) ("Absent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight.'") (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). However, an ALJ may discount a treating physician's opinion when the opinion is conclusory, the physician fails to support her opinion with objective medical evidence, the opinion is inconsistent with the medical record as a whole, or the evidence otherwise supports a contrary finding. *See* 20 C.F.R. § 404.1527(c); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155,

1159-60 (11th Cir. 2004). Moreover, although a physician's opinion is relevant evidence, "[a] claimant's [RFC] is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive." *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) (citing 20 C.F.R. § 404.1527(d)(2)).

Relevant here, Dr. Odjegba stated in a Social Security Questionnaire that Lowman had a severe impairment as a result of "depressive syndrome" and "anxiety related disorders." R. 514-28. The ALJ gave Dr. Odjegba's opinion no weight, R. 37, noting that Dr. Odjegba indicated Lowman's disability began in September 2010, even though Dr. Odjegba first saw Lowman in March 2012; that Lowman "did not allege mental impairments or limitations" and had "normal mood and affect" during her first meeting with Dr. Odjegba; that Lowman's medical records "do not indicate mental limitations of more than a moderate nature" and thus do not support Dr. Odjegba's testimony; and that Dr. Rogers' evaluation did not support Dr. Odjegba's testimony. R. 37.

The court begins by noting that many courts have criticized "form reports" such as the one Dr. Odjegba provided, *see* R. 515-20, in which a physician merely checks off a list of symptoms without providing an explanation of the evidence that supports her decision. As the Third Circuit put it, "Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at

best[.]" *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993). Moreover, these reports are conclusory and lack significant evidentiary value. *See, e.g., Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (holding use of "questionnaire" format typifies "brief or conclusory" testimony); *Hammersley v. Astrue*, No. 5:08-OC-10GRJ, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) ("[C]ourts have found that check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions").

In addition to the conclusory nature of Dr. Odjegba's testimony, the ALJ noted numerous other weaknesses. Dr. Odjegba opined that Lowman's severe impairment had begun a year and a half prior to the time he first saw her, yet provided no explanation of how he made this determination or what evidence he used in doing so. R. 515-20. Dr. Odjegba's opinion is also contradicted by his own records, which indicate that Lowman did not initially allege mental impairments, and never showed more than moderate symptoms throughout treatment. R. 382-440. Ultimately, because of the conclusory nature of Dr. Odjegba's opinion, the lack of medical evidence supporting it, and its inconsistency with Lowman's medical records, the ALJ's decision to give it no weight was supported by good cause. *See Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (finding good cause existed to reject testimony of treating physician where that testimony

was inconsistent with physician's notes); *Crawford*, 363 F.3d at 1159 (citation omitted) (holding that physician's report "may be discounted when it is not accompanied by objective medical evidence[.]").

## B. Dr. Rogers' Opinion

Lowman contends next that the ALJ erred in weighing the testimony of Dr. Rogers, an examining psychologist. Specifically, she contends that the ALJ substituted his own opinion for Dr. Rogers' by giving great weight to Dr. Rogers' opinion only as to the period after the date last insured. Doc. 11 at 32-36. In making his findings, an ALJ must "state with particularity the weight he gave different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179 (quoting *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). However, an ALJ cannot substitute his own opinion for that of a medical expert. *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982); *see*, *e.g.*, *Graham v. Bowen*, 786 F.2d 1113, 1115 (11th Cir. 1986) (reversing the ALJ's determination where the ALJ "improperly substituted his conclusion that appellant 'appeared moderately handicapped in her gait' for the medical evidence presented."); *Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986) (finding the ALJ improperly "rejected the opinions of the treating physician not even on the basis of a differing opinion by another doctor, but rather because the ALJ himself reached a different conclusion after viewing the medical records.").

Here, the ALJ did not substitute his own opinion of the medical records for Dr. Rogers'. Rather, he considered the content of Dr. Rogers' opinion and the opinion of another physician, Dr. Alexandre Todorov, in weighing Dr. Rogers' opinion. R. 28-29, 37-38. Dr. Rogers performed a single examination of Lowman nearly two years after Lowman's date last insured, and opined that Lowman had severe mental impairments. R. 478-90. Dr. Rogers did not, however, give any opinion as to the onset date of those impairments. R. 478-90. A few months later, Dr. Todorov examined Lowman's file and agreed with Dr. Rogers that the impairments Dr. Rogers detected were severe. R. 504-13. However, he reported that Lowman's CT head scan from four years earlier was normal, and that there was no data between 2010 and 2014 that suggested a date of onset for the impairments. R. 512. As a result, Dr. Todorov estimated that Lowman's decline in mental abilities was likely a premature decline in function in the preceding 6 to 12 months prior to Dr. Rogers' examination. *Id*. Thus, based on Dr. Todorov's opinion and the timing of Dr. Rogers' opinion, the ALJ reasonably concluded that Dr. Rogers' opinion did not carry significant weight prior to Lowman's date last insured.

### C. Lowman's Severe Impairments

Lowman contends the ALJ erred at step two of the analysis, by both failing to find that Lowman's impairments of depression and anxiety were "severe" and

by failing to evaluate the combined severity of all of Lowman's impairments. Doc. 11 at 36-38. At step two of the sequential analysis under the Act, the claimant has a "mild" burden to show a "severe" impairment. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). An impairment is severe if it is more than "a slight abnormality which has a minimal effect on the general ability to work." *Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986). Moreover, this effect must be continuous (or have the potential to be continuous) for at least twelve months beginning on or before the date the claimant was last insured. *See* 42 U.S.C. §§ 404.1509, 423(a)(1)(A), (c)(1); *Bard v. Soc. Sec. Admin. Comm'r*, 736 F. Supp. 2d 270, 274 (D. Me. 2010) (affirming the ALJ's conclusion that the plaintiff's depression and anxiety lacked the requisite continuity to be "severe"). Conflicting medical evidence may militate against a finding of "severe" impairment. *See Sellers v. Barnhart*, 246 F. Supp. 2d 1201, 1211 (M.D. Ala. 2002) (finding that diagnoses of back pain, gout, and dizziness did not alone establish "severe impairments" where no medical reports indicated functional limitations).

Here, the medical records reflect infrequent symptoms of depression and anxiety prior to December 31, 2012, suggesting these impairments were not severe. *See Larry v. Comm'r of Social Sec.*, 506 F. App'x 967, 970 (11th Cir. 2013) (finding substantial evidence indicated that the claimant's anxiety and depression did not constitute "severe" mental impairments where medical records reflected

improvement with medication and minimal treatment). Although Dr. Wendy Gomez diagnosed Lowman with depression on March 21, 2011 and April 12, 2011, Dr. Gomez reported that Lowman's mood had improved with medication and that there was "no unusual anxiety or evidence of depression" on May 25, 2011. R. 373-81. Lowman was also examined on March 23, 2012 and December 10, 2012 at Quality of Life Health Services, but no symptoms of depression were reported. R. 383-91. Lowman was not diagnosed with depression again until June 3, 2014. R. 437. With respect to Lowman's anxiety, although Lowman was diagnosed with anxiety on December 10, 2012, the medical notes state Lowman demonstrated an "appropriate mood and affect." R. 388-91. There is no subsequent record of Lowman's anxiety until August 20, 2013. R. 392. Relying on these facts, the ALJ correctly concluded that Lowman's depression and anxiety were not "severe" impairments based on substantial evidence.

Even assuming that the ALJ erred, however, this error is harmless because the ALJ assessed all of Lowman's impairments in combination at steps three, four, and five of the evaluation process. To begin with, "nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). In fact, "the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of

impairments that together qualify as 'severe,' is enough to satisfy step two." *Medina v. Soc. Sec. Admin.*, 636 F. App'x 490, 492 (11th Cir. 2016) (quoting *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). Moreover, even when the ALJ finds an impairment is not severe, prejudice to the claimant is unlikely where the ALJ gives full consideration to all impairments at the subsequent steps of the evaluation. *See Delia v. Comm'r of Soc. Sec.*, 433 F. App'x 885, 887 (11th Cir. 2011) (finding harmless error where ALJ found mental impairments non-severe but considered all the impairments at subsequent steps); *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) (finding that, even if the ALJ had erred in concluding some impairments were not severe, the error was harmless because the ALJ "considered all of [the claimant's] impairments in combination at later steps in the evaluation process.").

Although the ALJ found at step two that Lowman's depression and anxiety were "non-severe impairments," he concluded that Lowman "had the severe impairments of history of left temporal lobe contusion with closed head trauma in September 2010, cervicalgia with bulging Cf-6 disc, brachial neuritis or radiculitis, headache, and arthropathy." R. 29-30. The ALJ then proceeded through steps three, four, and five, analyzing the evidence of Lowman's alleged depression and anxiety and drawing specific conclusions as to the combined effect of all of

Lowman's alleged impairments. R. 31, 32, 36-38.[1] This analysis evinces sufficient consideration of the combined effect of all of Lowman's impairments, including her depression and anxiety. *See Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (holding that the ALJ had sufficiently considered the combined effect of impairments where the ALJ asserted that claimant "does not have 'an impairment *or combination of impairments* listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4.") (emphasis in original). As such, no basis exists to find reversible error.

### D. Whether Lowman's Disabilities Met or Equaled Listing 12.04, Listing 12.06, or Listing 12.02.

Lowman further contends that the ALJ erred by not finding that her impairments met or equaled Listings 12.02 (Organic Mental Disorders), 12.04 (Affective Disorders), or 12.06 (Anxiety Related Disorders) of the Listing of Impairments. Doc. 11 at 38-52; *see* 20 C.F.R. §404, Subpt. P, App. 1 (hereinafter "Listing"). Lowman bears the burden of showing that her impairments meet or

---

[1] The ALJ stated that Lowman's "medically determinable mental impairments, considered singly and in combination, did not cause more than minimal limitations in the claimant's ability to perform basic mental work activities and were therefore non-severe." R. 31. The ALJ then discussed the medical records relating to Lowman's depression and anxiety. R. 32. In assessing Lowman's RFC, the ALJ summarized and weighed Lowman's testimony and the medical evidence concerning Lowman's depression and anxiety, as well as the other alleged physical and mental impairments. R. 36-38.

equal a listed impairment. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991). To "meet" a listing, Lowman's impairment "must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). To "equal" a listing, Lowman must "present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id*. at 531 (emphasis in original).

### 1. *The record supports the ALJ's findings regarding paragraph B criteria.*

With respect to Lowman's mental impairments, the ALJ considered the four paragraph B criteria required for Listings 12.04, 12.06, and 12.02.[2] First, the ALJ found that Lowman "had no more than mild limitation" of activities of daily living. R. 32. This conclusion is supported by Lowman's function report, which notes that Lowman performs daily activities such as reviewing her child's homework, washing clothes, and cooking meals with her children. R. 200-08. Debra Chumley, Lowman's mother, also confirmed in her function report that Lowman completed

---

[2] Paragraph B requires a showing of two of four limitations: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. Listings 12.02(B), 12.04(B), 12.06(B). For the purposes of Paragraph B, a "marked" limitation means "more than moderate but less than extreme . . . such as to interfere seriously with [one's] ability to function independently, appropriately, effectively, and on a sustained basis." Listing 12.00C.

these daily activities. R. 213. Additionally, although they note Lowman's nausea and headaches, the medical records from the alleged date of onset through the date last insured do not indicate any restrictions of activities of daily living. R. 383-91. Second, the ALJ again found "no more than mild limitation" in maintaining social functioning. R. 32. Lowman's and Chumley's function reports support this conclusion: although both reports note that Lowman had problems getting along with others, they state that Lowman spent time with her children, had friends who visited her, and talked with her family and roommate on a daily basis. R. 200, 204, 217. Third, the ALJ concluded Lowman had "no more than mild limitation" in maintaining concentration, persistence, or pace based on a comprehensive review of the record. R. 32-33. The medical records from March 23, 2012, the date of Lowman's first medical visit after her alleged onset date, indicate that Lowman had "appropriate mood and affect," and the records from December 10, 2012 indicate her memory was intact. R. 386, R. 391. Fourth, the ALJ found no episodes of decompensation for extended duration. R. 33. The medical records provide substantial evidence reflecting there were no episodes of decompensation for extended duration. R. 321-528.[3] Thus, the ALJ did not err in finding paragraph B was not satisfied.

---

[3] Ms. Phillips' and Dr. Odjegba's questionnaire note that Lowman experienced repeated episodes of decompensation, each of extended duration. R.

## 2. The record supports the ALJ's findings that Lowman's impairments do not meet or equal Listing 12.04 or Listing 12.06.

Lowman points to Dr. Odjegba's and Ms. Phillips' questionnaire, as well as various medical records and excerpts of testimony, as evidence that her impairments meet or equal Listing 12.04 and Listing 12.06.[4] The medical records

---

519. However, this testimony was validly discounted for the aforementioned reasons. *See* Section V-A, *supra*.

[4] To meet or equal Listing 12.04, both paragraphs A and B must be satisfied, or paragraph C must be satisfied. Because the ALJ did not err in concluding that paragraph B was not satisfied, only paragraph C is relevant to whether the ALJ erred in the analysis of Listing 12.04. Paragraph C of Listing 12.04 requires: "C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: 1. Repeated episodes of decompensation, each of extended duration; or 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement."

To meet or equal Listing 12.06, both paragraphs A and B must be satisfied, or both paragraphs A and C must be satisfied. Paragraphs A and C of Listing 12.06 require: "A. Medically documented findings of at least one of the following: 1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms: a. Motor tension; or b. Autonomic hyperactivity; or c. Apprehensive expectation; or d. Vigilance and scanning; or 2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or 3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or 4. Recurrent obsessions or compulsions which are a source of marked distress; or 5. Recurrent and intrusive recollections of a traumatic

provide substantial evidence that Lowman's impairments do not satisfy all of the required criteria for the relevant time period. Although Dr. Gomez's notes from March 21, 2011 do indicate "depression, inability to focus, mood swings, and psychiatric symptoms," by May 25, 2011, Lowman's depression had evidently improved. R. 374, 380. Dr. Odjegba's notes from Lowman's next documented medical visit, on March 23, 2012, do not indicate any mental diagnoses or symptoms. R. 383-87. It was not until December 10, 2012, shortly before the date she was last insured, that Lowman was diagnosed with anxiety. R. 391. The notes from that visit describe nausea, headaches, constipation, and other symptoms, but there is no clear indication these symptoms resulted in a "complete inability to function independently outside the area of [her] home." R. 388-91.

### 3. *The record supports the ALJ's findings regarding the absence of an organic mental disorder (Listing 12.02).*

Furthermore, Lowman contends that she has suffered from an organic mental disorder that meets or equals Listing 12.02 since her accident on September 5, 2010. Doc. 11 at 49. Substantial evidence, however, indicates that Lowman's impairments do not meet or equal the criteria for Listing 12.02, at least prior to

---

experience, which are a source of marked distress; . . . C. Resulting in complete inability to function independently outside the area of one's home."

October 22, 2014.[5] Dr. James White's notes from October 6, 2010 and November 3, 2010 indicate that Lowman's memory was intact, her attention span and concentration were normal, and her memory was improving. R. 324-26. Dr. Terry Andrade's notes from November 16, 2010 through March 3, 2011 invariably describe Lowman's neurologic and psychiatric conditions as normal.[6] Moreover, the five medical records from March 2011 through December 2012 variously document Lowman's headaches, depressed mood, and other physical ailments, but Lowman has failed to explain how these impairments, during that time period, met or equaled Listing 12.02.

Finally, as to Lowman's contention that Dr. Rogers' report from his October 22, 2014 examination demonstrates that the ALJ erred, doc. 11 at 49-51, while Dr. Rogers' report suggests that Lowman had an organic mental disorder, Dr.

---

[5] To meet or equal Listing 12.02, both paragraphs A and B must be satisfied, or paragraph C must be satisfied. Thus, because the ALJ did not err in concluding that paragraph B was not satisfied, only paragraph C is relevant to whether the ALJ erred in the analysis of Listing 12.02. Paragraph C of Listing 12.02 contains the same language as paragraph C of Listing 12.04, except that "chronic affective disorder" is replaced by "chronic organic mental disorder." *See supra* note 4.

[6] "NEUROLOGIC: The patient is awake and alert. Oriented x 4. The judgment and insight of the patient is normal. The patient's immediate, recent, and remote memory seem normal. The mood and affect of the patient seem normal and appropriate to the situation. Language is intact for receptive and expressive functions. The fund of knowledge is within normal limits for age and educational background. Capacity for sustained mental activity and abstract thinking is within normal limits. . . . PSYCHIATRIC: Normal mental status, judgment, insight." R. 341, 344-45, 350-51, 353-54.

Todorov's responses indicate that this disorder was not present during the relevant time period beginning before December 31, 2012, *see* R. 478-89; R. 504-13; Section V-B, *supra*. Based on Dr. Todorov's estimate that Lowman's decline in mental abilities likely began somewhere between October 2013 and April 2014, the ALJ reasonably concluded that Lowman's impairments did not meet or equal Listing 12.02 through the date last insured. *See* R. 37.

### E. Lowman's Credibility

Lowman next contends that the ALJ erred in evaluating the credibility of Lowman's own testimony. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). The claimant must present:

> "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."

*Id.* (citation omitted). However, an ALJ may discredit a claimant's pain testimony if the ALJ articulates reasons for doing so and substantial evidence supports the ALJ's finding. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).

Although the Eleventh Circuit does not require explicit findings as to credibility, "the implication must be obvious to the reviewing court." *Foote*, 67 F.3d at 1562 (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983)). The ALJ is not required to use "particular phrases or formulations," but it cannot be a broad rejection which is not enough to enable this court to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Foote*, 67 F.3d at 1561). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the claimant's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff. *Wilson*, 284 F.3d at 1225 (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988)).

At the administrative hearing, Lowman testified that she could not work more than one day per week due to her mental and physical conditions. R. 108. She explained that she had stopped working in 2007 for reasons unrelated to her impairments. R. 83-85. Lowman testified that she had experienced depression, anxiety, and other mental impairments since enduring a head injury in 2010. R. 85, 100-01. Lowman stated that she "can't follow instructions, recipes, maps," has difficulty concentrating, and is frequently forgetful. R. 92, 95, 96-97. She testified that she sometimes experiences panic attacks and that she has headaches three-to-four times per week. R. 97, 101. Additionally, she explained that she experiences

numbness in her arms, pain in her left knee, and neck pain that reaches 10/10 at night. R. 101, 103. Lowman asserted that she cannot lift anything past her shoulders, and she estimated that she cannot stand for more than five minutes without feeling pain. R. 106. Subsequently, Lowman's mother testified that, since the 2010 head injury, Lowman has had short-term and long-term memory problems, has generally been depressed and paranoid, has "angry outbursts," and has difficulty following instructions. R. 110-13.

After considering both Lowman's and Lowman's mother's testimony, the ALJ concluded that Lowman's "medically determinable impairments could reasonably have been expected to cause some symptoms; however, the claimant's statements, and those of her mother, concerning the intensity persistence, and limiting effects of these symptoms through the date last insured are not entirely credible . . .." R. 35.[7] A review of the record indicates that the ALJ articulated adequate reasons for his findings that are supported by substantial evidence. *See Wilson*, 284 F.3d at 1225. The ALJ comprehensively reviewed medical evidence

---

[7] On March 28, 2016, SSR 16-3p superseded SSR 96-7p, the ruling concerning subjective complaints about pain that was in effect when the ALJ issued a decision in this case. Soc. Sec. Ruling 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *1. SSR 16-3p eliminates the term "credibility" from social security policy but does not change the factors that an ALJ should consider when examining subjective pain testimony. *See id.*, at *2-3. Moreover, SSR 16-3p does not apply retroactively, *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018), and when reviewing a final decision in a claim for DIB, the court reviews the decision using the rules that were in effect at the time of the decision. SSR 16-3p, 2017 WL 5180304, at *1.

dating back from Lowman's head injury to illustrate inconsistencies with the testimony of Lowman and that of her mother. *See* R. 35-38.

First, although Lowman claims to have suffered disabling impairments ever since her head injury, the medical records after the date of this injury do not indicate severe limitations. *See* R. 324-36. As the ALJ noted, Dr. White's medical notes from October 6, 2010 (a month after the injury) document that Lowman had no overt sensory or motor deficits and was not in acute distress, and his notes from November 3, 2010 indicate that she was "stable" and neurologically unchanged. R. 324-25. Similarly, Dr. Andrade's notes from five visits between November 16, 2010 to March 3, 2011 do not document any neurological or psychiatric abnormalities. R. 341, 344-45, 350-51, 353-54.[8] With respect to Lowman's neck impairment and headaches, Dr. Andrade's notes undermine her testimony: on January 6, January 20, and March 3, 2011, Dr. Andrade reported that Lowman's headache was "somewhat less severe," with "mild-to-moderate pain" and only a mild functional impairment that "doesn't interfere with daily activities." R. 346. Dr. Andrade further reported on these dates that Lowman's cervical spine and lumbar spine range of motion were full and asymptomatic. R. 341, 344, 348, 351, 354. Moreover, on December 10, 2012, the date of Lowman's last medical visit before her disability status expired, Lowman rated her pain as only 5/10. R. 390.

---

[8] *See supra* note 6.

Furthermore, Dr. Sathyan Iyer's October 10, 2014 report undermines Lowman's alleged inability to lift her arms: the report notes that Lowman has "full range of motion of all the major joints without restriction. . . . She does not appear to have any physical limitation." R. 466-67.

Second, as the ALJ pointed out, portions of the medical records undermine Lowman's testimony as to the persistence and intensity of her depression and anxiety. R. 35-36. After her initial diagnosis, Lowman's depression seemed to improve by May 25, 2011 and there is no further evidence of depression until June 3, 2014. R. 35, 379, 437; *see Dyer*, 395 F.3d at 1211–12 (affirming the ALJ's finding that the claimant's improvement with treatment was inconsistent with his subjective complaints). Although Lowman testified that she experiences panic attacks and anxiety, Dr. Gomez's notes from March 21, 2011 through May 25, 2011 state Lowman exhibited "no unusual anxiety or evidence of depression." R. 374, 378, 380. On June 3, 2014 and August 26, 2014, although Lowman was diagnosed with depression, Lowman's global assessment of functioning (GAF) were 55 and 57 respectively, indicating only moderate symptoms. R. 413, 439. [9]

---

[9] The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning. *Diagnostic and Statistical Manual of Mental Disorders* 32-34 (4th ed., Text Revision) ("DSM-IV-TR"). A GAF of 51-60 indicates: "**Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks), **OR moderate difficulty in social, occupational or school functioning** (e.g. few friends, conflicts with peers or co-workers)." DSM-IV-TR at 34 (emphasis in original).

Moreover, for the reasons explained above, the ALJ properly discounted Dr. Odjegba's report from September 22, 2014 and limited the weight of Dr. Rogers' psychological evaluation from October 22, 2014. *See supra* Sections V-A, V-B.

Third, Lowman's and her mother's function reports provide further substantial evidence that undermines Lowman's testimony that she is unable to work. Both reports indicate that, as of February 2013, Lowman completed daily activities including taking her children to the bus stop, washing dishes, checking her children's homework, washing clothes and cooking. R. 200-08; 213-220. Although "participation in everyday activities of short duration" does not necessarily disqualify a claimant from disability, these reports lend support to the ALJ's conclusion that Lowman can complete non-complex job tasks, simple one- and two-step procedures, and can have occasional contact with the general public and coworkers. *See Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997); R.38.

It is clear from the record that Lowman repeatedly reported troubling symptoms of depression, anxiety, and physical pain, particularly in 2013 and 2014 after her insured status expired. Nevertheless, this court cannot reweigh the evidence and must give "substantial deference" to the ALJ's decision. *See Dyer*, 395 F.3d at 1212 (citing *Wilson*, 284 F.3d at 1221). In light of the entire record,

there is substantial evidence supporting the ALJ's decision to discredit Lowman's and her mother's subjective testimony. *See Foote*, 67 F.3d at 1561.

## VI. CONCLUSION

Based on the foregoing, the court concludes that the ALJ's and Appeals Council's determination that Lowman is not disabled is supported by substantial evidence, and that the ALJ and Appeals Council applied proper legal standards in reaching their determinations. The Commissioner's final decision is **AFFIRMED**. A separate order in accordance with this memorandum of decision will be entered.

**DONE** the 24th day of September, 2018.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE